UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL MAZZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:23-cv-00073 |
| | ) |
| DELEK US HOLDINGS AND | ) |
| SUBSIDIARIES, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Pending before the Court is Delek US Holdings and Subsidiaries' ("Delek") Motion for Summary Judgment (Doc. No. 23). The motion has been fully briefed, (Doc. Nos. 25, 26, 27, 31), and is now ripe for review. For the following reasons, the Court will grant Delek's motion.

### UNDISPUTED FACTS AND BACKGROUND[1]

Delek manages four refineries in El Dorado, Arkansas; Big Spring and Tyler, Texas; and Krotz Spring, Louisiana. (Doc. No. 27 ¶¶ 1–3). In 2019, Delek's then-Vice President of Operations, Tim Crutcher, hired Plaintiff Michael Mazza as a Senior Director of Economics & Planning for the El Dorado refinery. (Id. ¶¶ 16, 21, 23–24, 28). At the time, there were three other Senior Directors of Economics & Planning: Pamela Jackson, Mindi Hill, and Steve Pennova, who are under 40 years of age. (Id. ¶¶ 17, 25). Pennova soon moved to a different position and was replaced by Joshua Price. (Id. ¶ 20). Thereafter, Jackson, Hill, Price, and

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. No. 27), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing that are not contradicted by the evidence in the record.

Mazza each were assigned to one refinery. (Id. ¶¶ 19, 22). In his role, Mazza was always only responsible for the El Dorado refinery. (Id. ¶ 28).

In 2020, Delek began restructuring its business as part of a reduction in force ("RIF") that ultimately impacted at least 200 employees. (Id. ¶¶ 31, 49). By this time, Mazza's, Hill's, Price's, and Jackson's job title had been changed to Director of Business Optimization. (Id. ¶ 25). As part of this restructuring, Crutcher anticipated retaining only two individuals to remain in this position over the four refineries, along with one individual over crude oil optimization and another individual operating to drive company-wide chain optimization. (Id. ¶ 37). Consistent with the RIF and his business restructuring plan, Crutcher reduced the number of directors overseeing specific refineries from four to two. (Id. ¶ 40). Both Hill and Price retained their jobs, (id. ¶ 57), and Jackson was moved to the new crude oil-specific role, (id. ¶ 58). On or about December 30, 2020, Crutcher and a member of Delek's HR team informed Mazza—who was 52 at the time—that his job would be eliminated the following day. (Id. ¶ 53; Doc. No. 26-6 at 2). Accordingly, Hill became responsible for both the Big Spring and Krotz Spring refineries and Price became responsible for both the Tyler and El Dorado refineries. (Doc. No. 27 ¶ 57).

In November 2020 and prior to Mazza's role being eliminated, Crutcher sought approval to hire Morgan Marks—who then was 37, (Doc. No. 26-6 at 2)—into the fourth position in his restructuring plan, which would also be titled Director of Business Optimization, (Doc. No. 27 ¶ 63). The position was similar to Mazza's in a number of ways besides its title. As indicated in an email thread between Crutcher and other Delek employees, the position would have roughly the same salary and exactly the same career architecture level and incentive structure as Mazza's. (Doc. No. 26-8 at 3). The email thread also indicated that the position was meant to "backfill" Mazza's role and identified Mazza as the "incumbent." (Id.). However, unlike Mazza's role,

2

which concerned a single refinery, (Doc. No. 27 ¶ 28), this role focused on collaborating with other business units to optimize overall production across the four refineries and to identify future business opportunities. (Id. ¶ 67).

After Mazza's employment was terminated, he saw that Marks' LinkedIn profile reflected that he had been hired as a Director of Business Optimization by Delek. (Id. ¶ 77). Thus, on January 23, 2023, Mazza filed the instant action, brining a single claim against Delek for violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*, by replacing him with Marks. (Doc. No. 1 at 3–4).

## I. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to

3

Case 3:23-cv-00073   Document 32   Filed 04/19/24   Page 3 of 9 PageID #: 497

survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

Moreover, if, "after adequate time for discovery and upon motion," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When this occurs, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323 (citation an internal quotation marks omitted). Conclusory statements "unadorned with supporting facts are insufficient." Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020). Thus, if the nonmovant does not support the elements of a claim or defense, the moving party is entitled to judgment as a matter of law.

**II. ANALYSIS**

Mazza alleges that Delek violated the ADEA by replacing him with Marks. (Doc. No. 1 at 3–4). An employee may establish a violation of the ADEA either by providing direct evidence of discrimination or by utilizing circumstantial evidence and proceeding under the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Briggs v. Potter, 463 F.3d 507, 514 (6th Cir. 2006). Here, Mazza relies only on circumstantial evidence to support his claim, and, as such, must proceed under the McDonnell Douglas framework. Id. To do so, Mazza must initially present a prima facie case of age discrimination. Id. If he satisfies this burden, it shifts to Delek to articulate a legitimate, nondiscriminatory reason for terminating Mazza's employment. Id. Once Delek articulates a

legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to Mazza to demonstrate that Delek's proffered reason is pretextual. Id.

"Typically, to prove a prima facie case for age discrimination, an employee must demonstrate that '(1) he or she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee.'" Pierson v. Quad/Graphics Printing Corp., 749 F.3d 530, 536 (6th Cir. 2014) (citation omitted). However, when an employee is terminated as part of a RIF, the employee must meet a heightened standard to prove his prima facie case by presenting "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled him out for impermissible reasons." Barnes v. GenCorp, 896 F.2d 1457, 1465 (6th Cir. 1990). The parties do not dispute that Mazza can prove the first three elements of the prima facie case. (See generally Doc. No. 25 at 11–12; see also Doc. No. 26 at 8–11 (same)). Instead, Delek's motion focuses on the fourth element. Specifically, the parties dispute whether Mazza was "replaced" by Marks or terminated as part of the RIF. Accordingly, the first inquiry is whether Mazza's position was eliminated as part of the RIF, such that he must meet the heightened standard. Id.

The Sixth Circuit laid out the inquiry courts must undertake to determine whether an employee was terminated as a part of a RIF in Barnes, stating:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

896 F.2d at 1465; see also Murray v. Meharry Medical College, 2022 WL 96630, at *3 (M.D. Tenn. Jan. 10, 2022) ("The determination of whether an employee's job was eliminated turns on whether another employee absorbed the terminated employee's duties in addition to other duties, or if another employee is hired or reassigned to perform the plaintiff's duties."). Most relevant here, a plaintiff's job is simply eliminated when his or her former duties are assumed by younger employees who perform those duties in addition to their other responsibilities. Pierson, 749 F.3d at 537.

Delek contends that the heightened standard applies because it engaged in a legitimate RIF between 2020 and 2021, and, as part of that RIF, it redistributed Mazza's duties to an existing employee who retained his other assigned work. (Doc. No. 25 at 13–15). Specifically, Delek points to undisputed record evidence that "Crutcher transferred [Mazza's] job responsibilities over the El Dorado refinery to Price (who was also performing the same function at the Tyler refinery), just as he subsequently transferred Jackson's job responsibilities over the Krotz Spring refinery to Hill." (Id. at 14; see also Doc. No. 27 ¶¶ 57, 60, 62). Thus, so says Delek, Mazza's position was eliminated in the RIF, and the role Marks entered is distinct from the one Mazza held, as it required Marks to analyze all four refineries and collaborate across Delek's business to optimize overall production. (Doc. No. 25 at 13–15).

Mazza does not mention, let alone meaningfully dispute, Delek's contention that a heightened standard applies. Despite Delek clearly raising the issue in its opening brief, (id), Mazza argues that Marks replaced him without reference to or argumentation about Delek's RIF or to whom Mazza's responsibilities were reassigned. (Doc. No. 26 at 8–9). While the Court could consider the lack of any argument on this point a concession, see AK v. Behavioral Health Sys., 382 F. Supp. 3d 772, 775 (M.D. Tenn. 2019) ("[W]hen a party fails to respond to an

argument, that argument is generally deemed to be unopposed and the proposition conceded"), Mazza's response to Delek's statement of undisputed material facts about the RIF is dispositive.

Mazza's job duties were assigned to another Delek employee, and Marks' position was different from Mazza's. Specifically, Mazza concedes as true:

- that "as part of this restructuring, Crutcher anticipated retaining only two individuals to remain in a director position over the four refineries, along with one individual over crude oil optimization and another individual operating to drive company-wide chain optimization," (Doc. No 27 ¶ 37);

- that "consistent with the RIF and his own business restructuring [plan], Crutcher reduced the number of Directors or Economics & Planning over [a single] refinery from four to two," (id. ¶ 40);

- that Mazza "was always only responsible for the optimization and performance of the El Dorado refinery," (id. ¶ 28); and

- that "Price became responsible for both Tyler an[d] El Dorado refineries," (id. ¶ 57).

These undisputed facts make clear that, as the result of the RIF, Price—not Marks—took over Mazza's responsibilities. No one was hired to perform Mazza's duties. Thus, the heightened standard applies.

Because the undisputed record evidence establishes Mazza's position was eliminated in the RIF, he cannot rely solely on his job duties were assigned to a younger employee. Barnes, 896 F.2d at 1465–66. He must meet the heightened standard of presenting additional direct, circumstantial, or statistical evidence to indicate that Delek singled him out for discharge on account of his age. Id. However, Mazza makes no attempt to meet this burden.

Instead, Mazza doubles down on his argument that Marks replaced him. (Doc. No. 26 at 5–7, 9–11). To support his claim, Mazza cites an email exchange indicating that Delek offered Marks a job with the same title, career architecture level, and incentive structure. (See id. at 5–6, 10–11 (citing Doc. No. 26-8)). The email also refers to Mazza as the "incumbent" and states that Marks' role "will directly backfill that of Michael Mazza, who is currently in the role." (Doc.

7

No. 26-8 at 3). Mazza's briefing suggests that the Court should construe the term "backfill" to mean "replace" for purposes of the ADEA. (Doc. No. 26 at 10–11).

While this evidence may create a genuine dispute of material fact on the fourth element of prima facie age discrimination case in most circumstances, it does not in the context of the RIF. After all, Mazza's conceded that his job responsibilities were reallocated to Price. (Doc. No. 27 ¶¶ 28, 57). What's more, Mazza fails to contend with Delek's explanation of how the company used the term "backfill" during the RIF. Not only did the same email exchange that Mazza cites later state that Marks would be backfilling Mazza "for headcount purposes," but, when Mazza's attorney asked Michael Cutter, Delek's Vice President of Talent and Strategy, about the email, Cutter explained that the company used the term with respect to headcount, not job responsibilities. (Doc. No. 24-3 at 33:5–21; 79:22–80:7). As Cutter stated, "Position No. 1,000 will have a unique identifier. I may eliminate Position No. 1,000, but I'll reattach that unique identifier to a different position within the organization to make sure I reconcile a head count. . . . So[,] backfill is just the term that refers to that unique identifier." (Id. at 79:22–80:7). Rather than bring forward evidence suggesting that "backfill" relates to anything more than Delek's employee headcount, Mazza merely cites his attorney reading directly from the aforementioned email. (See Doc. No. 27 ¶¶ 50, 60, 63, 65, 73, 75 (quoting Mazza's attorney rather than the deponent)). This does not amount to a genuine dispute of material fact or satisfy the applicable RIF standard.

Elsewhere, Mazza suggests that his ADEA claim should survive because the record evidence suggests that he was replaced by Price or Hill. (See e.g., Doc. No. 26 at 9 ("[I]f the Court finds that either Ms. Hill or Mr. Price, or both, replaced Mr. Mazza, each of them would also be considered substantially younger than Mr. Mazza sufficient for establishing a prima facie

case of age discrimination")). Similar to Marks, both Price and Hill were also in their "late 30s or early 40s" when Mazza's employment was terminated. (Doc. No. 26-1 at 60:1–7). But again, this does not respond to the RIF standard and the Complaint does not hint at this alternative theory. (See generally Doc. No. 1 (bringing a single ADEA claim related to Morgan Marks)). Mazza may not amend his pleadings in this way. See Desparois v. Perrysburg Exempted Vill. Sch. Dist., 455 Fed. App'x 659, 667 (6th Cir. 2012) ("The bar against asserting new theories at the summary-judgment-response stage is well established."). Accordingly, Mazza's prima facie case fails.

### III. CONCLUSION

For the foregoing reasons, Delek's Motion for Summary Judgment (Doc. No. 23) will be granted.

An appropriate order will enter.

                                                                                           WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

9

Case 3:23-cv-00073   Document 32   Filed 04/19/24   Page 9 of 9 PageID #: 503